UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| CARL ANDERSON,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>MICHAEL O. LEAVITT, Secretary of Health and Human Services,<br><br>　　　　Defendant. | CASE NO. C08-5171BHS<br><br>ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |

This matter comes before the Court on Defendant's Motion for Summary Judgment (Dkt. 14). The Court has considered the pleadings filed in support of and in opposition to the motion and the remainder of the file and hereby grants the motion for the reasons stated herein.

## I. PROCEDURAL BACKGROUND

On March 20, 2008, Plaintiff Carl Anderson filed a complaint against Defendant Michael O. Leavitt in his official capacity as the Secretary of Health and Human Services. Dkt. 1. Plaintiff alleges that Defendant terminated his employment in violation of Title VII of the Civil Rights Act of 1964, as amended at 42 U.S.C. § 2000e, and the Age Discrimination In Employment Act, ("ADEA"), codified at 29 U.S.C. §§ 631(b) and 633a. *Id*.

On February 20, 2009, Defendant filed a Motion for Summary Judgment. Dkt. 14. On March 25, 2009, Plaintiff responded. Dkt. 21. On March 27, 2009, Defendant replied. Dkt. 20.

## II. FACTUAL BACKGROUND

Defendant employed Plaintiff as a Funding Source Specialist ("FSS") for the Division of Medicaid and Children's Health, Seattle Regional Office ("Region 10"), Center for Medicare & Medicaid Services ("CMS"), between September 7, 2004, and August 31, 2005. Dkt. 14-2 (Notification of Personnel Action). Karen O'Connor was Plaintiff's immediate supervisor from September 2004 through April 2005. Dkt. 16, Affidavit of Karen O'Connor ("O'Connor Aff."), ¶ 2. Barbara Richards was Plaintiff's immediate supervisor from May 2005 until his employment was terminated in August 2005. Dkt. 15, Affidavit of Barbara Richards ("Richards Aff."), ¶ 2.

Approximately one hundred employees were hired into FSS positions nationally. *Id.* ¶¶ 3-4. Defendant claims that the FSS positions were designed to provide tighter financial oversight of Medicaid budgeting and expenditures by screening how states obtained their funds to meet the financial matching requirements for Medicaid. *See id.* It is undisputed that Plaintiff and four other individuals were hired for the Region 10 office at approximately the same time. O'Connor Aff., ¶ 3; Dkt. 21 at 4-5. Plaintiff claims that the other employees were as follows: Mary Bryant, a 39-year-old female; Gary William, a 45-year-old male; Trevor Wornath, a 35-year-old female; and Tom Couch, a 37-year-old male. Dkt. 21 at 5.

Defendant claims that Plaintiff's appointment to the FSS position was subject to the completion of a one-year initial probationary period that began on September 7, 2004. *See* Dkt. 14-2.

In March 2005, Plaintiff sent his supervisor Ms. O'Connor an email disparaging the then-Director of the Center for Medicaid and State Operations in CMS, as well as the Director's policy decisions concerning the "A-133 audits." O'Connor Aff., ¶ 12. Ms. O'Connor claims that she informed Plaintiff that his email "was not effective, collaborative, or professional." *Id.* Ms. O'Connor also advised Plaintiff that he was not responsible for the A-133 audit. *Id.* Ms. Richards claims that she also informed Plaintiff

that his email was "inappropriate" and that he should "cease and desist in writing provocative emails." Richards Aff., ¶ 8(a).

In May 2005, concerns surfaced about Plaintiff's misuse of his government credit card. *Id.* ¶ 8(d). While Defendant has not submitted evidence that Plaintiff misused the credit card, Ms. O'Connor and Ms. Richards claim that Plaintiff responded to the concerns of misuse in a way that suggested a "lack of good judgment." *Id.*; O'Connor Aff., ¶ 14.

On July 22, 2005, Ms. Richards wrote Plaintiff a memorandum providing formal notice to him of her concerns with his conduct. Richards Aff., ¶ 8; *see also id.* Attachment A. Ms. Richards outlined steps that Plaintiff would need to complete, at a minimum, over the next four weeks, in order to potentially preserve his employment with CMS. *See id.* The memorandum concluded by notifying Plaintiff that failure to improve his conduct and performance could result in his termination by CMS and that nothing in the memorandum could be construed as a waiver of CMS's right to terminate Plaintiff during his probationary period "for any reason deemed sufficient by Management." *Id.*

On August 22, 2005, Ms. O'Connor and Ms. Richards met with Plaintiff to discuss the "deliverables" that he provided in response to the memorandum. Ms. Richards claims that she told Plaintiff that while he had provided all the required deliverables, it was her opinion that he remained confused about his roles and responsibilities. Richards Aff., ¶ 8(h). In her view, Plaintiff had continued to refuse to take any responsibility for his actions that "could have caused people to have perceptions that were problematic." *Id.* Ms. O'Connor claims that, after the meeting, she "had not seen any change in [Plaintiff's] understanding of his oral or verbal communications or a willingness to accept responsibility for his job assignments." O'Connor Aff., ¶ 18.

On August 24, 2005, Plaintiff wrote Ms. Richards a letter in response to the July 22, 2005 Performance Memorandum he had received. Dkt. 22 at 29-34. Plaintiff explained his actions, in part, as follows:

> The misfortune I have in sometimes performing my work is a product of my experiences from private industry and my New England and Atlantic states east coast culture - that is "say it and do it" the way it is and don't spend a lot of time and concern as how it is done and said. My perception is that has been perceived by some persons as not appropriate.

*Id* at 29.

On August 31, 2005, Ms. Richards notified Plaintiff of his termination from his probationary position and from federal service. Richards Aff., ¶¶ 9, 13 and Attachment B; *see also* O'Connor Aff., ¶¶ 18-19 and Attachment C. Ms. Richards' letter read, in part, as follows:

> This constitutes formal notice that your competitive service probationary appointment as an Accountant, GS-51O-13, in the Division of Medicaid and Children's Health, Seattle Regional Office, will be terminated effective close-of-business August 31, 2005. I have determined that your conduct and performance, as set forth below, during your probationary period fails to demonstrate your fitness for continued employment with the Centers for Medicare and Medicaid Services ("CMS"). This is the Agency's final decision.
>
> Your performance and conduct as a Funding Source Specialist have not met the requirements for this position. As Karen O'Connor, Acting Deputy Regional Administrator, and I have conveyed to you on separate occasions during your tenure, and as we outlined in the July 22nd memorandum, your communications and conduct have not demonstrated adequate professional judgment and performance for this position. Furthermore, in a meeting we had with you on August 25, 2005, and a memo from you dated August 24, 2005, you have not taken accountability for your actions, rather you attempt to shift accountability to others or rationalize your behavior. I am not persuaded by your responses to counseling and performance discussions that you appreciate the seriousness of your conduct and performance deficiencies and their effect on the Agency. The accumulation of these factors causes me to question your professional judgment. I cannot trust you to carry out the responsibilities of your position. Your inability to successfully perform the duties and responsibilities of your position impairs the ability of this Division to efficiently carry out its mission and therefore negatively affects the successful accomplishment of the Agency's mission.
>
> I find it necessary to terminate your services during your probationary period because your performance problems and lack of good judgment do not demonstrate the requisite fitness for continued Federal employment. In addition, you have had difficulty accepting responsibility for your actions and behavior, and you have displayed a lack of tact and diplomacy while performing your duties. The role of the Funding Source Specialist is a critical component of the Division of Medicaid and Children's Health in the Seattle Regional Office, and it is imperative that your conduct be above reproach. You have failed to demonstrate good judgment in your dealings with managers, coworkers and external contacts.

*Id*.

# III. DISCUSSION

## A. Summary Judgment Standard

Summary judgment is proper only if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim in the case on which the nonmoving party has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1985). There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (nonmoving party must present specific, significant probative evidence, not simply "some metaphysical doubt"). *See also* Fed. R. Civ. P. 56(e). Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 253 (1986); *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

The determination of the existence of a material fact is often a close question. The Court must consider the substantive evidentiary burden that the nonmoving party must meet at trial – e.g., a preponderance of the evidence in most civil cases. *Anderson*, 477 U.S. at 254; *T.W. Elec. Serv., Inc.*, 809 F.2d at 630. The Court must resolve any factual issues of controversy in favor of the nonmoving party only when the facts specifically attested by that party contradict facts specifically attested by the moving party. The nonmoving party may not merely state that it will discredit the moving party's evidence at trial, in the hopes that evidence can be developed at trial to support the claim. *T.W. Elec. Serv., Inc.*, 809 F.2d at 630 (relying on *Anderson, supra)*. Conclusory, nonspecific

statements in affidavits are not sufficient, and missing facts will not be presumed. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888-89 (1990).

**B.    Defendant's Motion**

Defendant argues that Plaintiff has failed to produce evidence that creates a material issue of fact regarding Plaintiff's allegations of sex discrimination, age discrimination, and retaliation. Dkt. 14 at 6-9.

**1.    Title VII Discrimination**

Title VII of the Civil Rights Act of 1964 states that "[i]t shall be an unlawful employment practice for an employer . . . to discharge any individual . . . because of such individual's race, color, religion, sex, or national origin . . . ." 42 U.S.C. § 2000e-2(a).

In *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), the Supreme Court not only determined the order in which proof is to be presented in a case brought under Title VII, but also allocated the burdens of production. *Texas Dep't of Comty. Affairs v. Burdine*, 450 U.S. 248, 252 (1981). As a result, it is now firmly established that the plaintiff must first prove a prima facie case of discrimination. If a plaintiff does so, the employer must then present evidence which suggests that it had legitimate, nondiscriminatory reasons for its actions. Should the employer sustain its burden of production, a plaintiff must demonstrate that the reasons given by the employer are a pretext for discrimination. *Watson v. Ft. Worth Bank & Trust*, 487 U.S. 977, 986 (1988).

**a.    Prima Facie Case**

To establish a prima facie claim of gender based disparate treatment under Title VII, a plaintiff must show that:

> (1) he is a member of a protected class; (2) he was qualified for his position; (3) he experienced an adverse employment action; and (4) similarly situated individuals outside his protected class were treated more favorably, or other circumstances surrounding the adverse employment action give rise to an inference of discrimination.

*Fonseca v. Sysco Food Serv. of Arizona, Inc.*, 374 F.3d 840, 847 (9th Cir. 2004) (quoting *Peterson v. Hewlett-Packard Co.*, 358 F.3d 599, 604 (9th Cir. 2004)). With regard to the

fourth element, the Ninth Circuit has held that a plaintiff may meet his burden on this element by showing that "the job went to someone outside the protected class." *Coghlan v. American Seafoods Co. LLC*, 413 F.3d 1090, 1094 (9th Cir. 2005) (citing *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 506 (1993)); *McGinest v. GTE Serv. Corp.*, 360 F.3d 1103, 1122 (9th Cir. 2004).

In this case, Defendant only contests whether Plaintiff has met his burden as to the fourth element of the prima facie standard. *See* Dkt. 20 at 3-5. Specifically, Defendant argues that Plaintiff has failed to submit either direct evidence of sex discrimination or indirect "comparator" evidence of sex discrimination. *Id*. Plaintiff, however, claims that he was replaced by a female employee. Thus, under controlling Ninth Circuit precedent, Plaintiff has met his burden of establishing the fourth element of the prima facie test. Moreover, the Court finds that Plaintiff has also established that he is male, that he was qualified for the position, and that he was subjected to the adverse action of termination.

Therefore, the Court finds that Plaintiff has established a prima facie case of gender discrimination. The burden now shifts to Defendant to show legitimate, nondiscriminatory reasons for the adverse action.

**b.    Legitimate, Nondiscriminatory Reasons**

In this case, Plaintiff claims that "the defendant fails to state any legitimate reason or evidence for its adverse action." Dkt. 21 at 13. Defendant counters by citing Plaintiff's memo of termination, which states that his employment was terminated because his "communications and conduct have not demonstrated adequate professional judgment and performance for the position." Richards Aff., Attachment B. The Court finds that this was a legitimate, nondiscriminatory reason for the adverse action of terminating Plaintiff's employment. Therefore, Defendant has met its burden and the burden now shifts to Plaintiff to show that Defendant's reason is merely pretext.

### c. Pretext

A plaintiff can prove pretext either "(1) indirectly, by showing that the employer's proffered explanation is 'unworthy of credence' because it is internally inconsistent or otherwise not believable, or (2) directly, by showing that unlawful discrimination more likely motivated the employer." *Chuang v. University of California Davis, Bd. of Trustees*, 225 F.3d 1115, 1127 (9th Cir. 2000). A plaintiff can survive summary judgment without producing any evidence of discrimination beyond that constituting the prima facie case, if that evidence raises a genuine issue of material fact regarding the truth of the employer's proffered reasons. *Id*.

On the other hand, a plaintiff may not defeat a defendant's motion for summary judgment merely by denying the credibility of the defendant's proffered reason for the challenged employment action. *See Wallis v. J.R. Simplot Co.*, 26 F.3d 885, 890 (9th Cir. 1994); *Schuler v. Chronicle Broad. Co.*, 793 F.2d 1010, 1011 (9th Cir. 1986). Nor may a plaintiff create a genuine issue of material fact by relying solely on the plaintiff's subjective belief that the challenged employment action was unnecessary or unwarranted. *See Bradley v. Harcourt, Brace & Co.*, 104 F.3d 267, 270 (9th Cir. 1996)

In this case, Plaintiff argues that Defendant's legitimate, nondiscriminatory reason for his employment termination is merely pretext and summarizes the evidence in support of his argument as follows:

> [Ms. Richards'] statement and characterization of third parties [sic] statements of Anderson's performance and conduct were untrue; she directed Anderson to sign and back [date] a "spotless" performance appraisal while at the same time she was preparing a notice in which she opined that Anderson's work performance and conduct were inadequate; she made age based comments such as Anderson was confused about his job (dementia) but she could not tell Anderson the reason why she thought Anderson was confused, provides two isolated instances that Anderson's email was provocative yet senior CMS officials counter by stating that they were not provocative, similar situated individuals outside his protected class were treated more favorably and in a different manner to affect their employment status.

Dkt. 21 at 8-9.

First, Plaintiff alleges that Defendant's performance objectives and standards were not provided in a timely manner and did not sufficiently define the duties and responsibilities of the job. Dkt. 21 at 19-20. This allegation does not cast doubt on Ms. Richards' explanation that Plaintiff "displayed a lack of tact and diplomacy while performing [his] duties." Plaintiff's argument is misplaced.

Second, Plaintiff alleges that the backdating of his performance review evidences pretext. Dkt. 21 at 22-23. Plaintiff fails to explain how he was prejudiced by this action. Moreover, Ms. O'Connor claims that the "backdating" occurred because the reviews were completed over the phone and the documents were usually signed at the next face-to face meeting. *See* Dkt. 20-2, ¶ 5. Plaintiff's argument is without merit.

Third, although Plaintiff focuses on indirect evidence of pretext, he has submitted direct evidence that he was replaced by a female employee, Ms. Bryant. Defendant claims that Ms. Bryant was moved to the position that was occupied by Plaintiff because she *requested* the location transfer. *See* Dkt. 20-2, ¶ 6. In light of this admissible evidence, the Court finds a reasonable juror would not infer that Defendant had a discriminatory motive to terminate Plaintiff's employment and replace him with a female employee. In other words, the conflicting views on Plaintiff's replacement does not create a material issue of fact as to whether Defendant's legitimate reason to terminate Plaintiff's employment was merely pretext.

Finally, Plaintiff has failed to overcome the "same-actor inference." *See Bradley*, 104 F.3d at 270. In *Bradley*, the Ninth Circuit held that "where the same actor is responsible for both the hiring and the firing of a discrimination plaintiff, and both actions occur within a short period of time, a strong inference arises that there was no discriminatory action." *Id*. at 270-71. In this case, even if Plaintiff's allegations and evidence shows some inference of pretext, the fact that Ms. O'Connor both hired and participated in the decision to fire Plaintiff raises a strong inference that she did not hold a discriminatory bias against Plaintiff's gender.

Therefore, Plaintiff has failed to meet his burden by showing that Defendant's legitimate, nondiscriminatory reason for terminating his employment was merely pretext. The Court grants Defendant's motion on Plaintiff's claim for sex discrimination.

**2. Age Discrimination**

Plaintiff also brings a claim for age discrimination. The ADEA prohibits "arbitrary age discrimination in employment." 29 U.S.C. § 621(b). The ADEA makes it "unlawful for an employer . . . to fail or refuse to hire or to discharge any individual [who is at least 40 years of age] . . . because of such individual's age." *Id*. at §§ 623(a), 631(a). To succeed on his claim, Plaintiff must demonstrate that age actually motivated Defendant's decision to terminate him. *See Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 141 (2000).

Plaintiff again bears the initial burden of establishing a prima facie case of discrimination. If he establishes a prima facie case, the burden then shifts to Defendant to articulate a legitimate nondiscriminatory reason for its employment decision. Then, in order to prevail, Plaintiff must demonstrate that Defendant's alleged reason for the adverse employment decision is a pretext for another motive which is discriminatory. *See Schnidrig v. Columbia Machine, Inc.*, 80 F.3d 1406, 1409 (9th Cir. 1996) (citation omitted).

To establish a prima facie case of age discrimination, a plaintiff must show that: (1) he was a member of the protected class (over 40); (2) he was performing his job satisfactorily; (3) he was discharged; and (4) he was replaced by substantially younger employees with equal or inferior qualifications. *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1281 (9th Cir. 2000).

In this case, Plaintiff has most likely shown a prima facie case of age discrimination, but there may be a question of whether he was performing his job satisfactorily. Even if he can meet his burden on this element, Plaintiff has failed to show that Defendant's reasons for terminating his employment are merely pretext. Plaintiff does submit that Ms. Richards stated that Plaintiff was confused about his job. This

ORDER - 10

statement, however, is neither explicitly nor implicitly derogatory with regard to Plaintiff's age.

Therefore, the Court grants Defendant's motion on Plaintiff's claim for age discrimination.

### 3. Retaliation

Title VII "prohibits retaliation against an employee 'because he has opposed any practice made an unlawful employment practice'" by Title VII. *Nelson v. Pima Cmty. Coll.*, 83 F.3d 1075, 1082 (9th Cir.1996) (quoting 42 U.S.C. § 2000e-3(a)). To establish a prima facie case of retaliation, a plaintiff must show that (1) he engaged in statutorily protected activity, (2) his employer took an adverse employment action against him, and (3) there was a causal connection between the protected activity and the adverse action. *Vasquez v. County of Los Angeles*, 349 F.3d 634, 646 (9th Cir. 2003).

In this case, Plaintiff has failed to show that there was a casual link between his filing of an EEO complaint and termination of his employment. It is undisputed that Defendant terminated Plaintiff's employment on August 31, 2005. Plaintiff claims that he filed his EEO complaint on November 16, 2005. Dkt. 1 at 4-5. Plaintiff has not shown that he had prior contact with the EEO office and there can be no causal link of retaliation when the adverse action occurred before the protected activity. Therefore, the Court grants Defendant's motion for summary judgment on Plaintiff's claim for retaliation.

## IV. ORDER

Therefore, it is hereby

**ORDERED** that Defendant's Motion for Summary Judgment (Dkt. 14) is **GRANTED** and this action is **DISMISSED**.

DATED this 21st day of April, 2009.

BENJAMIN H. SETTLE
United States District Judge